UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF | : | |
| ELECTRICAL WORKERS LOCAL 1600, | : | |
|     Plaintiff, | : | |
|  | : | |
|     v. | : | No. 5:16-cv-04675 |
|  | : | |
| PPL ELECTRIC UTILITIES CORPORATION, | : | |
|     Defendant. | : | |

|  |  |  |
|---|---|---|
| ALICIA WATKINSON, | : | |
|     Plaintiff, | : | |
|  | : | |
|     v. | : | No. 5:16-cv-04676 |
|  | : | |
| PPL ELECTRIC UTILITIES CORPORATION, | : | |
|     Defendant. | : | |

## **O P I N I O N**

**Plaintiff Local 1600's Motion for Summary Judgment, Case No. 4675, ECF No. 18–Denied**
**Defendant PPL's Motion for Summary Judgment, Case No. 4675, ECF No. 19—Granted**
**Plaintiff Watkinson's Motion for Summary Judgment, Case No. 4676, ECF No. 17–Denied**
**Defendant PPL's Motion for Summary Judgment, Case No. 4676, ECF No. 18—Granted**

**Joseph F. Leeson, Jr.**                                                                     **December 22, 2017**
**United States District Judge**

### I.    INTRODUCTION

      These two consolidated cases involve a challenge to an employer's leave policy under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2611-2654. PPL Electric Utilities Corporation requires all employees taking sick leave to call their supervisor on the day leave is required. If an employee is using FMLA leave, though, she must make a three- to five-minute

phone call to a third party administrator in addition to calling her supervisor. This Court must decide whether this arrangement violates the FMLA. It concludes that it does not.

Plaintiff Alicia Watkinson is an employee of Defendant PPL Electric Utilities Corporation who failed to call the third-party administrator on several days when she wanted to take FMLA leave. As a result, PPL denied her requests for FMLA leave. Watkinson brought suit contending that PPL's policy violates FMLA regulations and interferes with her rights under the FMLA. Plaintiff International Brotherhood of Electrical Workers Local 1600 is the union to which Watkinson belongs, which brought a grievance on her behalf challenging the denial of FMLA leave. The grievance was resolved by arbitration, and the arbitrator dismissed the grievance. Local 1600 brought suit to set aside the arbitration award, arguing that because the award upheld a PPL policy that violates FMLA regulations, it is manifestly contrary to federal law. Furthermore, the union argues that the arbitrator's finding that the policy contains an exception for unusual circumstances was not supported by the record. PPL cross-moved for summary judgment.

This Court concludes that the FMLA regulations do not prohibit an additional requirement for giving notice of FMLA leave, and that PPL's policy does not otherwise violate the FMLA. Furthermore, the PPL policy contains an exception for unusual circumstances, but Watkinson has not established that unusual circumstances prevented her from complying with the call-in requirement on the dates in question. Therefore, PPL did not interfere with her rights under the FMLA. Because PPL's policy comports with the FMLA and does in fact contain an unusual circumstances exception, the arbitration award was proper. This Court therefore denies both plaintiffs' motions for summary judgment and enters summary judgment in favor of PPL.

## II. BACKGROUND

### A. Procedural Background

The two instant cases were consolidated on December 20, 2016. ECF No. 13 (No. 4675); ECF No. 12 (No. 4676).

**<u>Local 1600 v. PPL: No. 4675</u>**

Local 1600 filed its complaint against PPL on August 29, 2016. ECF No. 1. Local 1600 filed its motion for summary judgment, ECF No. 18, on May 1, 2017, and PPL filed its motion for summary judgment on the same day. ECF No. 19. Local 1600 filed its opposition on May 15, 2017, ECF No. 21, as did PPL. ECF No. 20.

**<u>Watkinson v. PPL: No. 4676</u>**

Watkinson filed her complaint against PPL on August 29, 2016. ECF No. 1. Watkinson filed her motion for summary judgment, ECF No. 17, on May 1, 2017, and PPL filed its motion for summary judgment on the same day. ECF No. 18. Watkinson filed her opposition on May 15, 2017, ECF No. 20, as did PPL. ECF No. 19.

### B. Factual Background

PPL is a public utility company that provides electricity to residential and commercial customers in Pennsylvania. Def.'s Statement of Material Facts (SMF) ¶ 1, ECF No. 19-2; Pl.'s Response to Def.'s Statement of Material Facts (RMF) ¶ 1, ECF No. 23.[1] Watkinson works for PPL as a customer service representative in its office in Scranton, Pennsylvania,[2] and belongs to

---

[1] The summary judgment filings are identical in both consolidated cases. For simplicity, all references in the Factual Background are to the ECF numbers for Case No. 4675.

[2] Appropriate for the site of a PPL branch office, Scranton happens to be known as "The Electric City," a reference to its construction in 1886 of the first all-electric streetcar system in

Plaintiff International Brotherhood of Electrical Workers Local 1600. Def.'s SMF ¶ 2; Pl.'s RMF ¶ 2. Local 1600 and PPL are parties to a collective bargaining agreement (CBA) that governs the terms and conditions of Watkinson's employment. Def.'s SMF ¶ 3; Pl.'s RMF ¶ 3.

Watkinson received approval for intermittent FMLA leave in 2015. Pl.'s Statement of Material Facts (SMF) ¶ 1, ECF No. 18; Def.'s SMF ¶ 27. PPL uses Sedgwick, a third party administrator, to manage FMLA leave for PPL employees; PPL's FMLA leave policy requires employees using intermittent FMLA leave to contact both their supervisor and Sedgwick on the day they take leave. Pl.'s SMF ¶¶ 4-5; Def.'s SMF ¶¶ 4, 10, 19. Employees taking regular sick leave must only call their supervisor. Pl.'s SMF ¶ 15; Def.'s SMF ¶ 10. A call to Sedgwick takes between three and five minutes. Def.'s SMF ¶ 14; Pl.'s RMF ¶ 14.

On July 13, 2015, Watkinson advised her supervisor that she needed to leave early, referencing FMLA time, and left to go home. Pl.'s SMF ¶ 3; Def.'s SMF ¶ 46. Watkinson drove herself home, a twenty- to thirty-minute trip on the highway. Def.'s SMF ¶ 50; Pl.'s RMF ¶ 50. As of July 13, 2015, Watkinson had been informed that she needed to call Sedgwick on the day she took leave, and had previously had leave requests denied when she did not call Sedgwick as required. Pl.'s SMF ¶ 10; Def.'s SMF ¶¶ 30, 31. However, Watkinson did not call Sedgwick to report her FMLA absence on July 13, 2015, and as a result, PPL denied her request for FMLA leave for that day and recorded an unexcused absence on her record. Pl.'s SMF ¶¶ 12-13; Def.'s SMF ¶¶ 30-31, 48, 53; Pl.'s RMF ¶ 53. Watkinson contends that on July 13 and the other days she did not call Sedgwick, she was too "incoherent" to call; by "incoherent" she means that her anxiety became so great that her mind was "ruminating" and she had to go home, get into bed,

---

the United States. *See* http://thetimes-tribune.com/news/scranton-gained-fame-as-the-electric-city-thanks-to-the-region-s-innovative-spirit-1.965641.

contact her doctor, and take prescription medications. Def.'s SMF ¶¶ 36, 38, 39; Pl.'s RMF ¶¶ 36, 38, 39. Watkinson believes that she may have contacted her doctor on July 13. Def.'s SMF ¶ 51; Pl.'s RMF ¶ 51.

When she returned to work, Watkinson offered to provide a doctor's note explaining why she did not call Sedgwick on July 13, but she was not permitted to do so. Pl.'s SMF ¶ 14; Def.'s SMF ¶¶ 53, 57. She admits, though, that doctor's notes were brought in only for sick leave, and that she had never brought in a doctor's note previously for FMLA leave; she was "grasping at straws" to avoid the unexcused absence on her record. Pl.'s SMF ¶ 56-57; Def.'s SMF ¶¶ 56-57.

In her 2015 performance review, Watkinson received an "unsatisfactory" rating with respect to dependability because of her absences, although she received a "satisfactory" rating overall. Ex. E to Pl.'s Mot. Summ. Judg., ECF No. 18-3. Local 1600 filed a grievance pursuant to the CBA, challenging PPL's denial of Watkinson's requested FMLA leave and the resulting "unsatisfactory" rating in her performance review. Pl.'s SMF ¶ 20; Def.'s SMF ¶ 73. Watkinson attended the first and second step grievance meetings, but never mentioned that she had been too incoherent to call Sedgwick on July 13. Pl.'s SMF ¶ 52; Def.'s SMF ¶ 52. The grievance was heard in an arbitration hearing by Arbitrator Stanley Aiges on May 4, 2016; on July 30, 2016, the arbitrator issued an arbitration award in which he denied Local 1600's grievance. Pl.'s SMF ¶¶ 21, 23; Def.'s SMF ¶¶ 74-75.

III.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof

of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

IV.    ANALYSIS

A. Watkinson's FMLA Interference Claim

Congress passed the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2611-2654, "to balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1).

The FMLA entitles an eligible employee to a total of twelve work weeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1). The FMLA prohibits any employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided by the Act. 29 U.S.C. § 2615(a)(1). Interfering with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. 29 C.F.R. § 825.220(b). The Act's prohibition against interference also prohibits an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. §§ 825.215, 825.220(c).

An employee can bring two types of claims against an employer under the FMLA: (1) interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive FMLA rights and (2) retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the FMLA. *See Grosso v. Fed. Exp. Corp.*, 467 F. Supp. 2d 449, 457–58 (E.D. Pa. 2006). Watkinson brings only an interference claim. Watkinson Opp. Summ. Judg. 4 n.1. To prove an FMLA interference claim, "a plaintiff must show that: (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the employer of her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA." *Atchison v. Sears*, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009). In proving interference, the plaintiff does not need to prove that the employer acted with discriminatory intent. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012). An

interference action is not about discrimination; it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA. *Callison v. City of Philadelphia*, 430 F.3d 117, 119–20 (3d Cir. 2005).

### 1. PPL's Call-in Notice Requirement

The parties do not dispute Watkinson's status as an eligible employee or PPL's status as an employer subject to the FMLA's requirements. Rather, the parties dispute whether Watkinson gave proper notice to PPL. The parties agree that the Fifth Circuit Court of Appeals confronted a nearly identical set of facts in *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017). In *Acker*, the Fifth Circuit Court of Appeals evaluated an employer's call-in policy that required employees to make one phone call to request sick leave, but two phone calls to request FMLA leave, and concluded that an employer could deny FMLA leave to an employee who failed to comply with that policy. *Id.*

In *Acker*, General Motors had a call-in policy nearly identical to PPL's, which required employees to give notice of FMLA leave by calling in on the usual General Motors absence line and also calling a specified "benefits and services" line particular to FMLA leave.[3] *Id.* at 778. On two days when the plaintiff called the General Motors line, but not the FMLA line, General Motors denied FMLA leave, and the plaintiff brought an FMLA interference action. *Id.* The claim in *Acker*, like Watkinson's interference claim here, hinged on the question of notice. The Fifth Circuit observed that the FMLA requires the employee to give the employer "notice of his intention to take leave in order to be entitled to it." *Id.* at 788. FMLA regulations link this notice requirement to employers' ordinary notice procedures for requesting leave and provide that

---

[3]  As in this case, in *Acker*, Sedgwick administered the FMLA call-in line and made recommendations concerning FMLA leave. *Acker v. Gen. Motors LLC*, No. 4:15-CV-706-A, 2016 WL 3661466, at *1 (N.D. Tex. July 1, 2016), *aff'd sub nom. Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017).

"[w]here an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied," even when leave is unforeseeable. *Id.* at 788-89 (quoting 29 C.F.R. § 825.302(d) and 29 C.F.R. § 825.303(c)). Analyzing this regulation, the court concluded that "[a]n employer may thus require that an employee hew to the employer's usual and customary procedures for requesting FMLA leave," and that denying leave when an employee does not follow those procedures does not violate the FMLA unless the employee can demonstrate unusual circumstances. *Id.* Because the employee had failed to comply with General Motors' usual procedures for requesting FMLA leave, and he could not prove that unusual circumstances prevented him from following those procedures, the court determined that General Motors was entitled to summary judgment on the employee's interference claim. *Id.* at 789-90.

Plaintiffs contend that the Fifth Circuit Court of Appeals decided *Acker* incorrectly, and that the holding violates the regulations governing the FMLA. Plaintiffs point to 29 C.F.R. § 825.303(c), one of the regulations the *Acker* court considered, which requires an employee requesting unforeseeable FMLA leave to comply with the employer's "usual and customary" procedures for requesting leave:

> (c) Complying with employer policy. When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA–qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied.

29 C.F.R. § 825.303(c). Plaintiffs focus on the provision which reads: "For example, an employer may require employees to call a designated number or a specific individual to request leave." They point to the word "or" and conclude that an employer may require employees to call a designated number or a specific individual, but not both. Because PPL requires employees to call both the PPL number and Sedgwick, Plaintiffs argue, PPL violates the regulation. The Court finds this argument unpersuasive. Plaintiffs' conclusion overlooks the obvious explanatory nature of the sentence: it begins "For example," and provides an illustration of one type of call-in policy that can satisfy the FMLA, not a requirement that all call-in policies must meet. *See Acker*, 2016 WL 3661466, at *3 ("[P]laintiff concedes that 29 C.F.R. § 825.303(c) includes *as an example*, that an employer may require an employee to call a designated number to request FMLA leave." (emphasis added)). In other words, the example suggests a sufficient condition for satisfying the notice requirements under the FMLA, but not a necessary condition; it does not restrict an employer's choice of notice policies.

Plaintiffs also interpret Section 825.303(c) to prohibit employers from adopting different or more burdensome procedures for giving notice of FMLA leave than ordinary sick leave. They point out that the regulation requires employees to follow the usual procedures for requesting "leave," and not for requesting "FMLA" leave. Indeed, the Department of Labor does seem to have intended Section 825.303(c) to allow employers to adopt their existing procedures for requesting sick leave to the FMLA context: the comment on the final rule observes that "call-in procedures are a routine part of many workplaces and are critical to an employer's ability to manage its work force. Adherence to such policies is even more critical when the need for leave is unforeseen" and that employer commenters "argued that employees should be required to follow the same procedures for requesting leave regardless of whether their need for leave was

<em>10</em>
<em>122217</em>

covered by the FMLA." Regulations Implementing the Family and Medical Leave Act of 1993, 73 Fed. Reg. 67,934, 68,005 (Nov. 17, 2008) (codified at 29 C.F.R. § 825.303).

However, the conclusion that 29 C.F.R. § 825.303(c) contemplates employers allowing their employees to use the same procedures for non-FMLA and FMLA leave does not mean that Section 825.303(c) precludes separate procedures for providing notice of FMLA leave. The regulation provides this rule: if an employee *does not comply* with the employer's usual notice policies, then the employer *may deny FMLA relief*, absent unusual circumstances. From this language, Plaintiffs infer this rule: if an employee *does comply* with the employer's usual notice policies (by making one phone call), then the employer *may not deny FMLA relief*. Plaintiffs deny the antecedent, and draw an invalid inference from the text of the regulation. Section 825.303(c) states that an employer satisfies the FMLA by allowing employees to use the same notice procedures for FMLA leave as they do for ordinary leave; nothing in the regulation forecloses an employer requiring additional procedures for giving notice of FMLA leave. Put differently, the "usual and customary" requirements act as a floor, not a ceiling. Therefore, nothing in 29 C.F.R. § 825.303(c) prohibits PPL's two-call policy.

PPL's FMLA policy does not run afoul of the FMLA simply because it requires employees to take one more step than they do to give notice of sick leave. Thus, the question becomes whether the policy violates the FMLA for any other reason. The Court concludes that it does not.

Employers may impose requirements governing their employees' notice of FMLA leave that extend beyond the FMLA's own notice requirements, provided that they do not contradict the FMLA's notice requirements. *See Callison*, 430 F.3d at 121 ("We recognize that where an employer's internal policies conflict with the FMLA, the FMLA controls and the employee need

only comply with the requirements of the Act to invoke its protection."); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013) (concluding that "an employer may impose and enforce its own internal notice requirements, even if those requirements go beyond the bare minimum that would generally be sufficient under the FMLA to constitute proper notice"); *Ortega v. San Juan Coal Co.*, Civ. No. 12-CV-0501 MV/RHS, 2013 WL 12116377, at *22 (D.N.M. Oct. 3, 2013) ("[W]hile Section 825.303(c) generally requires compliance with an employer's usual and customary policies, it does not authorize an employer to require its employees to comply with policies that are inconsistent with the rights granted to employees in that section."). Thus, this Court must compare PPL's policy to the requirements of the FMLA regulations. *See Boadi v. Ctr. for Human Dev., Inc.*, 239 F. Supp. 3d 333, 346 (D. Mass. 2017) (comparing employer's personal notification requirement with that of regulation subsection 825.303(a) to determine if they are consistent or inconsistent).

The notice requirements in Section 825.303 require that an employee provide notice to the employer "as soon as practicable" and note that "[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." 29 C.F.R. § 825.303(a). Additionally, an employee must provide "sufficient information" to allow her employer to "reasonably determine" whether the FMLA applies to the request. 29 C.F.R. § 825.303(b). Plaintiffs do not contend that PPL's policy conflicts with these provisions, and this Court finds that it does not.

Instead, Watkinson contends that PPL's policy imposes an excessive burden on employees' exercise of FMLA leave, even with an exception for unusual circumstances, as it "requires an employee in an emergency situation to call two separate individuals." Watkinson

12
122217

Mot. Summ. Judg. 12. However, as Watkinson recognizes, "[a]ny time an employee takes intermittent unforeseeable FMLA leave, something has suddenly happened, either to themselves or someone close to them, that is of a somewhat emergent nature." *Id.* at 12 n.6. Notice requirements for unforeseeable FMLA leave, by their definition, require an employee's time in the midst of an emergency; hence the requirement that an employee comply "as soon as practicable," instead of "immediately." Furthermore, courts routinely enforce call-in policies. *See, e.g.*, *Callison*, 430 F.3d at 121 (determining that because the defendant's "call-in policy neither conflicts with nor diminishes the protections guaranteed by the FMLA, it is not invalidated by the Act" and the plaintiff "was required to comply with the policy and the City did not abrogate his FMLA rights by placing him on suspension for the violations"). Courts have not found policies invalid or overly burdensome just because they require two separate phone calls. *See Gunter v. Cambridge-Lee Indus., LLC*, 186 F. Supp. 3d 440, 443, 452 (E.D. Pa. 2016) (denying summary judgment because of a genuine issue of material fact concerning whether employer mailed the necessary FMLA paperwork to employee before employee requested leave, where company call-out policy required separate calls to employer and third-party FMLA administrator); *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 481 (E.D. Pa. 2014) (finding no FMLA violation and not addressing call-in policy's requirement that employee call both supervisor and third-party administrator). The district court in *Acker* concluded that "[r]equiring plaintiff to notify defendant of his request to take FMLA leave at two phone numbers does not seem outside the scope of allowable requirements for requesting FMLA leave." *Acker*, 2016 WL 3661466, at *3.

This Court reaches the same conclusion. PPL requires a phone call to the employee's supervisor and a three- to five-minute phone call to Sedgwick to provide the details needed to

determine whether the FMLA applies. These requirements do not impose so great a burden on employees that they would discourage the employees from taking unforeseeable FMLA leave. *See Sommer v. The Vanguard Grp.*, 461 F.3d 397, 405 (3d Cir. 2006) (citing 29 C.F.R. § 825.220(b) for the proposition that interference includes discouraging an employee from taking FMLA leave). PPL's requirement of two phone calls to give notice of FMLA leave does not violate the FMLA.

   2. **Unusual circumstances**

Plaintiffs also argue that PPL failed to include an exception to its regular notice requirements for unusual circumstances, and that its failure to do so violates FMLA regulations. Furthermore, they contend, PPL violated the FMLA by not excusing Watkinson from complying with the notice policy based upon unusual circumstances.

Section 825.303(c) of the FMLA regulations excuses an employee from complying with her employer's usual notice procedures in the event of "unusual circumstances." *See* 29 C.F.R. § 825.303(c) ("If an employee does not comply with the employer's usual notice and procedural requirements, *and no unusual circumstances justify the failure to comply*, FMLA–protected leave may be delayed or denied."(emphasis added)). Contrary to Plaintiffs' position, this provision does not require that an employer's written FMLA notice policy state that it contains an exception for unusual circumstances. Instead, the regulation itself provides the exception. An employer's FMLA notice policy does not violate the FMLA just because it does not contain an explicit unusual circumstances exception.

In opposition to this conclusion, Plaintiffs cite *Medley v. County of Montgomery*, No. CIV.A. 12-1995, 2013 WL 300741, at *7 (E.D. Pa. Jan. 25, 2013), and *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 582–83 (5th Cir. 2010), but misconstrue both.

Watkinson Mot. Summ. Judg. 11. The *Medley* court did not deny summary judgment in favor of the employer because of the language of the employer's policy, but because the court found a dispute of material fact as to whether unusual circumstances prevented the plaintiff from complying with the policy. 2013 WL 300741, at *7 (finding material issue of fact as to whether employee's son's anxiety attack and absence of anyone else to care for him prevented plaintiff from complying with employer's notice requirements). In *Saenz*, the Fifth Circuit applied a superseded version of Section 825.303(c) which did not require an employee to comply with the employer's ordinary notice procedures. The court denied summary judgment because, although the plaintiff satisfied the minimum notice requirements of the FMLA, it found a factual issue "as to whether the facts of this case support application of a heightened standard," i.e., the employer's standard policies. 613 F.3d at 582–83. As *Acker* recognized, the amendment to Section 825.303(c) that requires employees to comply with the standard policies of their employers superseded the holding in *Saenz*: an employer's policies are no longer a "heightened standard"—they are the default standard. 853 F.3d at 790.

Plaintiffs' arguments also miss the mark because, as PPL correctly points out, the PPL FMLA notice policy does contain an explicit exception for unusual circumstances. In language mirroring Section 825.303(c), the policy states:

> Employees must comply with the usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances when the need for leave is not foreseeable. If an employee does not comply with the usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

Def.'s Ex. 1 at 9, ECF No. 19-4. Watkinson argues that even if PPL had an exception for unusual circumstances, PPL did not "disclose" it, such that it effectively had none.

Watkinson Mot. Summ. Judg. 11. Watkinson concludes that any exception was undisclosed because she had been told before that she had to call Sedgwick on the day she took FMLA leave, or not at all. She also points to a card distributed to employees explaining PPL's FMLA notice policy that did not mention an exception for unusual circumstances. *Id.* at 9-10. These facts do not establish that PPL had no exceptions for unusual circumstances; rather, the explanation given to Watkinson and the written summary simply reiterate the policy, which requires an employee to call Sedgwick to give notice of FMLA leave. Watkinson also argues that PPL had no exception because when she asked to submit a doctor's note to excuse her failure to call Sedgwick on July 13, 2015, she was not permitted to do so. *Id.* at 10. However, PPL's refusal to accept the doctor's note does not mean they had no exception for unusual circumstances. Watkinson herself admitted that she offered to bring in the note because she didn't want a negative notation on her record, not because she was too sick to call. Watkinson Dep., Def.'s Ex. 2, 40:10-20, ECF No. 19-5. She acknowledged that doctor's notes were only brought in for sick leave, not FMLA leave, and that she was "grasping for straws at that point." *Id.*

Because the language of PPL's policy does not violate the FMLA, the question becomes whether Watkinson can establish that unusual circumstances prevented her from complying with PPL's policy, a question of fact. *See Medley*, 2013 WL 300741, at *5 (citing *Millea v. Metro–North R. Co.*, 658 F.3d 154, 162 (2d Cir.2011)). The FMLA does not define "unusual circumstances" *Id.* (citing *Verges v. Honda Mfg. of Alabama, LLC*, Civ. A. No. 11–1261, 2012 WL 3260367, at *3 n. 2 (N.D. Ala. Aug. 8, 2012)). However, Section 825.303(c) provides an example of unusual circumstances: "However, if an employee requires emergency medical treatment, he or she would not be required to

follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c). Courts have deemed circumstances "unusual" when the medical condition or illness prevents compliance with the normal procedures, *see Howard v. VT Halter Marine, Inc.,* 2011 WL 2414672 (S.D. Miss. June 10, 2011), the employee cannot access a phone, *see Flores v. Murphy Co.,* 2014 WL 584553, at *6 (D. Or. Feb.12, 2014), the employer's policies conflict with the law, *see Millea v. Metro–North R. Co.,* 658 F.3d 154, 161–62 (2nd Cir. 2011), or the employer has misled the employee is some way regarding the proper procedures, *see Uselton v. CSX Transp., Inc.,* 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014).

Watkinson suggests that unusual circumstances existed because her medical condition prevented her from complying with PPL's procedures, specifically, that she was too "incoherent" to call Sedgwick. Watkinson explains that by "incoherent," she means suffering from anxiety severe enough that she would need to contact her doctor and take medications. Watkinson Dep. 46:16-24. However, Watkinson has contacted Sedgwick about one hundred times in her career; in 2015, she sought FMLA leave eleven times prior to July 13, and called Sedgwick on all but three of those occasions. Pl.'s RMF ¶¶ 28-29; Watkinson Dep. 44:15-20. Watkinson provides no details as to how her condition was worse on July 13, 2015, than on previous occasions, such that she could not comply with the FMLA notice policy. In fact, Watkinson's testimony casts doubt on her assertion that her condition on July 13, 2015, truly prevented her from calling Sedgwick. She admitted that while she was incoherent, she was able to drive herself home, a twenty- to thirty-minute trip on the highway. Watkinson Dep. 23:20-24:1. And although she did not go to her doctor that day, she was able to communicate with him, as

she would often do when she was incoherent. Watkinson Dep. 37:17-18; 63:6-13. Watkinson never told Sedgwick or PPL that she was too incoherent to call, and never mentioned this excuse in the grievance meetings concerning the denial of FMLA leave for July 13, 2015. Watkinson Dep. 26:15-23; 45:5-8; 46:8-15.

When an employee is approved for FMLA leave because of a medical condition, she cannot claim an unusual circumstances exception to notice requirements simply by asserting that she was experiencing that medical condition at the time she was required to provide notice, without offering any more explanation. *See Acker*, 2016 WL 3661466, at *4 ("Plaintiff claims that at times his condition subjects him to fatigue, dizziness, and disorientation, but, without more information, this is not enough to support the conclusion that defendant violated his FMLA rights by denying him FMLA leave when he was not in compliance with defendant's FMLA leave notification policy."). Otherwise, the unusual would become the usual, and the exception would swallow the rule. Although sympathetic to Watkinson's condition, this Court does not find that she established unusual circumstances. Therefore, PPL permissibly denied her FMLA request for failure to give proper notice. PPL is entitled to summary judgment on Watkinson's interference claim.[4]

## B. Local 1600's Claim to Vacate Arbitration Award

Local 1600 presents two reasons for vacating the arbitration award: (1) the arbitrator manifestly disregarded federal law in reaching the award because he ruled in favor of PPL even though their FMLA leave policy violates federal law, and (2) the award is not rationally based on

---

[4] Accordingly, this Court need not reach the issue of whether Watkinson suffered a harm giving rise to relief on an interference theory.

18
122217

the record because the arbitrator made the factual finding that PPL's FMLA notice policy contains an unusual circumstances exception, which Local 1600 contends is false. Neither reason entitles Local 1600 to relief. As this Court concluded above, PPL's FMLA policy does not violate federal law; therefore, the arbitrator did not manifestly disregard federal law by ruling in favor of PPL. As discussed above, the PPL FMLA policy does contain an exception for unusual circumstances; therefore, the arbitrator based his conclusions on facts on the record. This Court grants summary judgment in favor of PPL on Local 1600's claim to vacate the arbitration award.

V. CONCLUSION

For the foregoing reasons, Plaintiff Local 1600's Motion for Summary Judgment is denied, Plaintiff Alicia Watkinson's Motion for Summary Judgment is denied, and Defendant PPL's Motion for Summary Judgment is granted. A separate Order will issue.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge